IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRUST BANK, N.A., ) | |
| ) | |
| Appellant, ) | |
| ) | No. 16 C 11394 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| LOUISE HARPER, ) | |
| ) | |
| Appellee. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the appeal of creditor-appellant CenTrust Bank, N.A. ("CenTrust") from the bankruptcy court's December 5, 2016 orders denying CenTrust's motions for relief from the automatic stay and for a finding that the automatic stay had terminated (Bankr. Dkt. Nos. 49 & 50) and confirming debtor-appellee Louise Harper's Chapter 13 plan (Bankr. Dkt. No. 52). For the reasons explained below, the Court affirms the bankruptcy court's orders.

**BACKGROUND**

Harper owns a commercial property at 1600 South Pulaski Road in Chicago (the "Property"). On December 10, 2007, CenTrust loaned Harper $416,000.00, evidenced by a promissory note. To secure the loan, Harper granted to CenTrust a mortgage on the Property.

In 2014, Harper filed a petition for relief under Chapter 13 of the Bankruptcy Code. The case was dismissed a few months later for unreasonable delay in confirming a plan. In 2015, Harper filed another Chapter 13 case that was dismissed on June 30, 2016, for the failure to make plan payments.

On September 9, 2016, Harper filed a third Chapter 13 case. Pursuant to Harper's plan of reorganization, Harper would retain the Property; CenTrust's secured claim was valued at $195,000.00 (the value of the Property, as represented in Harper's petition); Harper would make sixty monthly payments of $3,769.90 to CenTrust, with interest at an annual percentage rate of six percent; and the total estimated payments, including interest, on the claim would be $226,193.76. (Bankr. Dkt. No. 2 at 2-3.)

Because the 2016 case was filed within a year of the 2015 case's dismissal, 11 U.S.C. § 362(c)(3) applied, which would terminate the automatic stay on the thirtieth day after the filing of the 2016 case unless the bankruptcy court, on motion of a party in interest for continuation of the stay and after a hearing completed during the first thirty days that the case was pending, entered an order extending the stay if the movant demonstrated that the filing of the later case was in good faith as to the creditors to be stayed. On September 12, 2016, Harper so moved to extend the automatic stay.

On September 16, 2016, CenTrust filed a motion under § 362, seeking modification of the automatic stay, which would allow CenTrust to foreclose on the Property. (Bankr. Dkt. No. 13.) CenTrust stated in its motion that there remained a principal balance due to it on the loan in the amount of $304,040.46, plus accrued interest in the amount of $11,532.20, with per diem interest thereafter; the fair market value of the Property did not exceed $200,000.00; and because the aggregate secured indebtedness to CenTrust exceeded the value of the Property, Harper had no equity in the Property. (*Id.* at 2.) CenTrust also argued, without elaboration, that the Property was not necessary for Harper's effective reorganization or, in the alternative, reorganization was not feasible. (*Id.*)

2

On September 19, 2016, the bankruptcy court held a hearing on Harper's motion to extend the automatic stay. CenTrust stated that it had no objection to the motion, but noted that it had filed its own motion to modify the stay, which it had set for presentment on October 17. (ECF No. 5, Tr. of Sept. 19, 2016 Hr'g.)[1] The bankruptcy court granted Harper's motion. (Bankr. Dkt. No. 16.) On October 17, CenTrust's counsel appeared and stated that Harper's counsel was out of town and had asked if the hearing could be continued to November 14. The Court continued the hearing. (ECF No. 6, Tr. of Oct. 17, 2016 Hr'g.)

On November 2, 2016, Harper filed a modified plan, which addressed another creditor's objection and did not alter the treatment of CenTrust's claim. (Bankr. Dkt. No. 24.) CenTrust filed an objection to confirmation of the modified plan, in which it reiterated the arguments in its motion to modify the automatic stay; noted that Harper had not filed a written response to its motion; cited Harper's two prior bankruptcy cases; and argued that because the plan did not provide for payment of the entire remaining balance on CenTrust's loan, the court should deny confirmation. (Bankr. Dkt. No. 30.)

On November 14, 2016, the bankruptcy court held a confirmation hearing (which had been continued from November 7) and a hearing on CenTrust's motion to modify the stay. CenTrust reiterated the arguments in its filings and asserted that it did not have adequate protection[2] and the plan was not feasible. (ECF No. 8, Tr. of Nov. 14, 2016 Hr'g at 2-3.) Harper argued that she was capable of making the proposed payments because one payment had already been made and she was "holding" the second. She noted that because the Property is not

---

[1] "ECF No." citations are citations to this Court's docket.

[2] 11 U.S.C. § 1325(a)(5)(B)(iii)(II) requires "adequate protection" for secured creditors.

3

Harper's primary residence, the Bankruptcy Code permitted Harper's Chapter 13 plan to modify the rights of secured creditors like CenTrust. *See* 11 U.S.C. § 1322(b)(2); *In re Reeves*, 65 B.R. 898, 899 (N.D. Ill. 1986) ("Secured creditors who are not within the exception for holders of claims 'secured only by a security interest in real property that is the debtor's principal residence' (the '§ 1322(b)(2) exception') may be forced to accept certain modifications of their rights under the 'cram down' provision of Chapter 13, 11 U.S.C. § 1325(a)(5)(B)."); *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997) ("Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral.") (citations omitted). Harper further argued that because she did business out of the Property (operated a restaurant downstairs and rental units upstairs), the Property was necessary for the reorganization because she derived more than half of her income from it. After additional discussion, the bankruptcy court continued the hearing for a week in order to have additional time to review the parties' filings.

On November 18, 2016, CenTrust filed a supplemental objection to the modified plan in which it argued that Harper could not provide it with adequate protection, due to her history of failing to make payments of principal on the loan since July 2009 and failing to pay the second installment of 2015 real estate taxes. (Bankr. Dkt. No. 36.) The next day, Harper filed a second modified plan, which addressed another creditor's objection and did not alter the treatment of CenTrust's claim. (Bankr. Dkt. No. 37.) CenTrust filed an objection to the second modified plan on the same grounds it previously asserted, with additional argument that Harper had not

4

submitted her plans in good faith, and noting that the second modified plan provided for mortgage arrearage payments to other creditors but not CenTrust. (Bankr. Dkt. No. 39.)

On November 21, 2016, the bankruptcy court held another continued confirmation hearing. (ECF No. 9, Tr. of Nov. 21, 2016 Hr'g.) CenTrust reiterated its objections and made note of its pending motion to modify the automatic stay. Harper argued that CenTrust's motion was baseless because the plan provided for payment of the full agreed-upon fair market value of the Property over a sixty-month period; she had already made one payment and counsel held another; the real estate taxes that CenTrust had paid were advanced during a period in which CenTrust and Harper were in a forbearance agreement that then expired, and CenTrust had been unwilling to extend it; Harper was willing to pay the real estate taxes going forward; and the income Harper derived from the Property demonstrated that she would be able to make the payments contemplated by the plan. CenTrust stated that it was "skeptical" that Harper would make the payments. The bankruptcy court continued the hearing for about two weeks in order to review the second modified plan.

On November 28, 2016, CenTrust filed a motion for a finding that the automatic stay had terminated. (Bankr. Dkt. No. 46.) It argued therein that the bankruptcy court should enter an order finding that the stay had been terminated as to CenTrust by operation of 11 U.S.C. § 362(e)(1), which provides that the stay terminates thirty days after a request for relief from the stay unless the Court orders a continued stay pending a final hearing, and 11 U.S.C. § 362(e)(2), which provides that the stay terminates sixty days after such a request for relief unless the parties agree to an extension, the Court renders a final decision in the meantime, or the Court extends the stay for good cause.

The bankruptcy court held a continued hearing on December 5, 2016, and made the following oral ruling:

> The first motion is the motion of CenTrust Bank for relief from the stay. The motion was originally filed on September 16th, and was presented on October 17th, 2016. During each of the subsequent statuses on the motion and on CenTrust's objections to the proposed plan, CenTrust did not object to the continuation, and the court finds that CenTrust waived its right to have a preliminary hearing within 30 days of presentment, or a final hearing within 60 days of presentment.
> The debtor has dealt with several other objections that have been filed to its proposed plans, and the final objection which must be contended with is that of CenTrust.
> The debtor has demonstrated good faith in working through the objections of various creditors. CenTrust has asked this court to modify the stay, and has objected to the debtor's most recent plan and all prior proposed plans. The lender, CenTrust, seeks modification to allow it to foreclose on nonresidential property located at 1600 South Pulaski Road, Chicago, Illinois.
> CenTrust seeks modification based on the following allegations:
> First, that the debtor has no equity in the South Pulaski Road property. The balance is approximately $304,000, plus accrued interest of $11,532 through September 30th.
> The fair market value is 195,000 based upon the appraisal, which I have not seen, but which has been alleged by both the debtor and CenTrust of $195,000. So the court's going to take that as the value. And as far as I am aware, there's no dispute about the value.
> The South Pulaski Road property that CenTrust argues is not necessary to an effective reorganization of the debtor, and it states in the alternative to the plan proposed by the debtor is not feasible.
> Under Section 362(d) of the Bankruptcy Code, CenTrust would be entitled to an order modifying the stay for cause, including the lack of adequate protection of an interest in property, or if the debtor does not have an equity in such property, and such property is not necessary to an effective reorganization.
> CenTrust has the burden of proof to show that the automatic stay should be modified. It has not done that, and the court believes that it cannot at this point. Clearly, the debtor has no equity in the property, but it is clearly necessary for the debtor's reorganization. The debtor earns approximately $7,900 from the property each month. She operates a restaurant in the property and has, I believe, two rental units in it also.
> The debtor's proposed a plan which provides that over the course of the five-year plan, the debtor will pay $3,769.90 per month to the CenTrust Bank.
> Total payments will be in the amount of $226,193.76, which includes six percent interest. The entire secured portion of the claim will be paid during the life of the plan. This is appropriate under Section 1325(a)(5) of the Bankruptcy

> Code. As the plan provides that CenTrust will retain its lien until the underlying debt is paid, and there is a discharge under Section 1328. And if there is a dismissal prior to that time, the lien will remain.
>
> The payments will be in the form of periodic payments in equal monthly installments. The plan and the debtor's I and J [Schedules] provide evidence that the debtor will be able to make the payments, and, in fact, the debtor has made the pre-confirmation payments as required.
>
> The Bankruptcy Code allows cram-down of a nonresidential mortgage in Chapter 13. The court finds that the value of the property is $195,000 based on the apparent agreement of the parties. A secured portion of the mortgage or [$]195,000 will be paid in full over the course of the plan, and six percent interest has been provided on top of the secured portion of the claim.
>
> Moreover, 11 percent of the unsecured portion will be paid as it will be paid to all general unsecured creditors, so CenTrust will actually be getting more. This is far more than CenTrust would have received in a Chapter 7 proceeding. The court finds that the plan, as proposed, is feasible and is proposed in good faith.
>
> Therefore, the court will deny the motion to modify the stay; will deny the motion to determine the stay has terminated; will overrule the objection filed by CenTrust to the proposed plan; and the November 19th, 2016, modified plan will be confirmed.

(ECF No. 10, Tr. of Dec. 5, 2016 Hr'g.) The same day, the bankruptcy court entered orders confirming Harper's Chapter 13 plan and denying, for the reasons stated on the record, CenTrust's motions for relief from the automatic stay and for a finding that the automatic stay had been terminated.

This appeal followed.[3]

## DISCUSSION

This Court sits as an appellate court for bankruptcy court proceedings. *See* 28 U.S.C. § 158(a)(1). The Court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *See Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). Where the bankruptcy court correctly states the law, "its determination of whether the facts met

---

[3]The parties request oral argument. The requests are denied because the briefs adequately present the issues and oral argument will not materially add to the Court's understanding.

the legal standard will be disturbed only if it is clearly erroneous." *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011) (citing *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006)).

CenTrust frames the issues for review as follows: 1) whether the bankruptcy court erred by denying CenTrust's motion to modify the automatic stay; 2) whether the bankruptcy court erred by denying CenTrust's motion for a finding that the automatic stay had terminated; and 3) whether the bankruptcy court erred by confirming Harper's second modified plan. (ECF No. 11, Appellant's Br. at 3-4.) The Court will first address CenTrust's challenge to confirmation of the plan, in which four arguments are raised.

CenTrust first argues that the bankruptcy court erred in confirming Harper's second modified plan because it did not do so until December 5, 2016, which was more than forty-five days after the meeting of creditors, in violation of 11 U.S.C. § 1324(b). That provision, however, states: "The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a), unless the court determines that it would be in the best interests of the creditors and the estate to hold such hearing at an earlier date and there is no objection to such earlier date." The statute therefore prescribes a time frame for a confirmation *hearing*, not confirmation itself. Here, the meeting of creditors took place on October 17, 2016. The first confirmation hearing was held on November 7, 2016, within the specified time frame, and it was continued several times. As Harper points out, § 1324(b) contains no prohibition on continuing a hearing that is commenced within the specified time frame. Moreover, CenTrust cites no authority for the proposition that the confirmation hearing must be completed or that the bankruptcy court must rule on confirmation within that period. *See, e.g.*, *In re Escarcega*, 557 B.R. 755, 762-63 (Bankr. N.D. Cal. 2016) (while § 1324 requires the bankruptcy court to convene a hearing on confirmation of

proposed Chapter 13 plan between twenty and forty-five days after the meeting of creditors, "[n]othing in the statute requires a substantive or conclusive hearing within this period, let alone a decision on confirmation").

Next, CenTrust contends that the court should not have confirmed Harper's plan because Harper did not file her petition or propose her plans in good faith. Good faith is determined by examining the totality of the circumstances, of which "the most fundamental and encompassing is whether the debtor has dealt fairly with his creditors. Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990) (citation omitted). Regarding Harper's petition, the extent of CenTrust's argument is that because Harper filed the 2014 and 2015 bankruptcy cases, the 2016 case was not filed in good faith. At the hearing on Harper's motion to extend the automatic stay, which required her to demonstrate that her petition was filed in good faith, CenTrust did not raise any bad-faith argument; to the contrary, it specifically stated that it had no objection. Acccordingly, it waived the argument that the petition was filed in bad faith. Even if it had not done so, the argument is unpersuasive. CenTrust's argument is cursory; it does not present any analysis of the totality of the circumstances. Given those circumstances, which the bankruptcy court discussed in detail in its December 5, 2016 ruling, and the fact that the plan Harper filed at the outset of the case provided for payment of the full amount of CenTrust's allowed secured claim, this Court concludes that the petition was not filed in bad faith. As for Harper's plans, CenTrust fails to develop in its opening brief, and thus waives, the argument that they were not proposed

9

in good faith. *See Blise v. Antaramian*, 409 F.3d 861, 866 n.3 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver.").[4]

CenTrust also asserts that the plan failed to provide its secured claim with adequate protection under 11 U.S.C. § 1325(a)(5)(B)(iii)(II), which states that the amount of periodic payments on a claim "shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan." In support of its perfunctory argument, CenTrust merely states that Harper has not made principal payments on the loan since July 2009; she failed to pay real estate taxes; and the plan "does not provide for payment of the secured indebtedness to CenTrust." (Appellant's Br. at 17.) These contentions miss the mark. The Bankruptcy Code does not define "adequate protection," but the requirement is intended to "protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor." *In re Satcon Tech. Corp.*, No. 12-12869 KG, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *see also In re Robson*, 369 B.R. 377, 380 (Bankr. N.D. Ill. 2007) (stating that "a secured creditor's interest in property is not adequately protected if the property is depreciating during the automatic stay") (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988)). CenTrust does not show or even assert that the value of its collateral—the Property—will diminish while Harper uses it during the pendency of the plan.

---

[4] In its reply brief, CenTrust presents additional argument that appears to go to the issue of good faith, as well as argument that the bankruptcy court erred in confirming Harper's plan because 1) the value of property to be distributed under the plan was less than the amount that CenTrust would receive if the estate were liquidated under Chapter 7; 2) Harper's other creditors received "disproportionate recovery"; and 3) CenTrust was prejudiced by "being compelled to accept payments on the reduced value of the loan over a term of" five years. (ECF No. 14, Appellant's Reply at 3-5.) CenTrust waived these arguments by raising them for the first time in its reply brief. *See Darif v. Holder*, 739 F.3d 329, 336-37 (7th Cir. 2014).

Finally, CenTrust maintains that Harper "never responded to," and "the Court never held a hearing" on, CenTrust's objections to confirmation. (Appellant's Br. at 17.) CenTrust mischaracterizes the record. Although Harper never filed a written response to CenTrust's objections, she did respond to them at the various hearings held by the bankruptcy court. Furthermore, the bankruptcy court held a number of hearings on confirmation. None of them were evidentiary hearings, but CenTrust did not request one, and it fails to explain what the purpose of such a hearing would have been in that there were any disputed facts to resolve.

CenTrust thus presents no persuasive argument that the bankruptcy court erred in confirming Harper's second modified plan. Harper argues that the remaining issues CenTrust raises, which concern the automatic stay, are moot because even if there had been grounds to terminate the automatic stay as to CenTrust, the absence of the stay would not authorize CenTrust to take collection action contrary to the confirmed Chapter 13 plan. (ECF No. 13, Appellee's Br. at 20.) The Court agrees; granting relief from the stay now would have no practical effect. *See In re Statistical Tabulating Corp.*, 60 F.3d 1286, 1290 (7th Cir. 1995) ("Because the stay is dependent on the existence of the bankruptcy, the dismissal of the case disposed of any dispute about the stay."); *In re Sparrgrove*, 313 B.R. 283, 289 (W.D. Wis. 2004) ("The propriety of the automatic stay is moot; an automatic stay terminates upon dismissal, 11 U.S.C. § 362(c)(2)(B), and I have already concluded that dismissal was warranted."). CenTrust's reply is based solely on its argument that the bankruptcy court erroneously confirmed Harper's plan, which the Court has rejected.

## CONCLUSION

The Court affirms the bankruptcy court's orders of December 5, 2016 (Bankruptcy Docket Nos. 49, 50, and 52).

**SO ORDERED.**                                     **ENTERED:**    **July 27, 2017**

_____

**JORGE L. ALONSO**
**United States District Judge**